STATE OF VERMONT

| SUPERIOR COURT<br>Vermont Unit | ENVIRONMENTAL DIVISION<br>Docket No. 106-7-14 Vtec |
|---|---|
| Natural Resources Board,<br>    Petitioner<br><br>v.<br><br>Stratton Corporation,<br>    Respondent | DECISION |

**Decision Regarding Scope of Hearing**

Treetop Development Company, LLC, Treetop Three Development Company, LLC, Intrawest Stratton Development Corporation, and The Stratton Corporation (collectively Stratton) received Act 250 Land Use Permit 2W1142 (the Permit) from the District 2 Environmental Commission (the Commission) for the development of 25 three-unit townhouse buildings near Stratton Mountain in the Town of Stratton, Vermont (the Project) on November 18, 2002. Stratton failed to construct the project in accordance with the Permit and did not receive written approval for the alterations. Some of the alterations were to the stormwater management systems, which the Permit required be constructed in conformance with stormwater discharge permits previously granted to Stratton by the Agency of Natural Resources (ANR). On March 12, 2012, Stratton applied for an Act 250 permit amendment to remedy all violations and restore the Project site. On October 21, 2013, the Commission issued Land Use Permit Amendment 2W1142-D to address the remediation and alterations (the Permit Amendment). This Permit Amendment was not appealed and is therefore final.

Stratton's failure to receive advance approval of the alterations to the Project and their failure to construct the Project as permitted are violations of Act 250. The Natural Resources Board (NRB) and Stratton entered into an Assurance of Discontinuance on July 15, 2014 (the AOD) to resolve the Permit violations and address Stratton's failure to obtain the Permit Amendment prior to altering the Project. The AOD requires Stratton to comply with the Permit and the Permit Amendment, take certain actions to bring the project site into compliance with

all permit conditions and regulations, pay a civil penalty, and reimburse the NRB and ANR for the cost of enforcement.

The Treetop at Stratton Condominium Association, Inc. (the Association), representing the interests of the owners of the Project's townhouse condominium units, participated in the various Act 250 proceedings. The Association expresses an interest in ensuring that the Project infrastructure, especially the stormwater management system and erosion control elements, are constructed in conformance with the Permit, Permit Amendment, and all applicable regulations.

This Court, by its November 14, 2014 entry order , granted the Association's motion to intervene in the enforcement proceeding pursuant to 10 V.S.A. § 8020. In a subsequent status conference the parties questioned whether § 8020 mandates a hearing as to whether the AOD is insufficient to carry out the purposes of the State's Environmental Law Enforcement chapter or whether the decision to hold a hearing is within the Court's discretion. The parties filed briefs on this issue. On the record of the March 9, 2015 status conference, the Court determined that it has discretion to hold a hearing and further that a hearing is necessary.

Also during the March 9, 2015 status conference, the Association indicated its desire to raise issues regarding what it alleged to be numerous ongoing violations at the Project that are not contained within the AOD. The Association's position is that these violations are property before the Court in this matter pursuant to the language of 10 V.S.A. § 8020. The NRB and Stratton both disagree with this suggestion, arguing that the scope of the matter before the Court is limited to the violations contained in the AOD. The Court provided the parties with an opportunity to brief this legal issue. Having considered the parties' filings, we now addresses the issue of the scope of the merits hearing in this matter.

Section 8020(h) sets out both the standard for considering whether to allow a party to intervene in an enforcement action as well as the scope of the intervenor's participation. It states that "[w]hen the Environmental Division permits an aggrieved party to intervene, it shall be <u>for the sole purpose</u> of establishing that <u>the terms of an</u> administrative order, emergency

2

administrative order, <u>assurance of discontinuance</u>, or civil citation <u>are insufficient to carry out the purposes of this chapter</u>." 10 V.S.A. § 8020(h) (emphasis added).[1]

The Association argues that in order to ensure that the purposes of Act 250 and the relevant stormwater and water quality statutes and rules carried out, the Court should look to any and all alleged violations and not simply those included in the AOD. The Association argues that "[a]llowing the party that violated its permits to collaborate with the regulatory authorities to limit the scope of the AOD to some but not all of the violations, and thereby limit the extent of the Court's review, would either prevent the proper adjudication of all violations, or would force the aggrieved party to file additional complaints with the ANR and present the Court with multiple enforcement actions." (Mem. Regarding Scope of Review at 8–9, filed Mar. 23, 2015).

It is the NRB and ANR that have the power to enforce Act 250 and other environmental statutes and it is within their discretion to determine whether a violation exists and to determine appropriate remedies for violations. See 10 V.S.A. § 8003 ("The Secretary [of ANR] <u>may</u> take action under this chapter to enforce the [listed environmental] statutes and rules, permits, assurances, or orders implementing [those statutes], and the [NRB] <u>may</u> take such action with respect to [Act 250]." (emphasis added)). Section 8020 provides for an aggrieved party's <u>participation</u> in an existing enforcement action, while at the same time limiting the scope of that participation solely to establishing that the <u>terms of the AOD</u> are insufficient to carry out the purpose of the State's Environmental Law Enforcement chapter. 10 V.S.A. § 8020(h). The definition of "aggrieved person" provides further direction that the scope of § 8020 is limited to the violations identified within an AOD by requiring that an aggrieved person allege an injury to a particularized interest <u>and</u> that "the alleged injury is attributable to a violation <u>addressed by an assurance of discontinuance</u>, administrative order, emergency order, or civil citation . . . ." 10 V.S.A. § 8020(a) (emphasis added). To read § 8020 to allow an intervenor to raise any violation, as the Association asks this Court to do, would read this second requirement out of the statute. Thus, by its own clear and unambiguous language § 8020 does not provide an avenue for a party to initiate a new enforcement proceeding by raising new violations not contained in the AOD. Thus, in a situation such that the Association

---

[1] In preparation for our merits hearing, we note that it is the intervenor's burden to show that an AOD is insufficient by a preponderance of the evidence. <u>Id</u>.

presents, where a party alleges violations not contained in an administrative order or AOD, the statutory scheme allows the party to file a complaint or petition with the NRB or ANR requesting that the agency investigate and enforce potential violations. See 10 V.S.A. § 8005 (granting ANR and the NRB the power to "investigate upon receipt or discovery of information that an activity is being or has been conducted that may constitute or cause a violation").

We therefore conclude that the scope of the matter before the Court, and therefore the scope of our merits hearing, is limited to the violations contained in the AOD which are: 1) the fire truck access, 2) retaining walls and tree clearing, and 3) the stormwater detention basin and conveyance system. We acknowledge that Association believes other violations exist that are not referenced in the AOD. Again, Vermont's administrative enforcement process allows the Association to file a complaint with the appropriate regulatory authority and ask that it initiate investigations and enforcement actions. We additionally acknowledge that if the Association pursues this course and further violations are discovered requiring additional enforcement actions, the process could potentially be repetitive and inefficient. Any resulting delay, although undesirable, is necessary because to allow an intervenor to unilaterally expand the scope of the enforcement action before the Court would transform the Environmental Division into the enforcement body in place of ANR or the NRB. The statutory framework, considered as a whole, makes clear that he Court's role is to serve as a check and balance within the enforcement system and to undertake a specific and limited review of the Agency or Board's enforcement actions. See 10 V.S.A. §§ 8003–8013. Vermont's enforcement process was revised in 2012 to ensure aggrieved parties have awareness of enforcement efforts and an opportunity to comment early in the process. An aggrieved party thereafter can seek intervention before the Environmental Division for the sole purpose of establishing that the terms of the State's and the respondent's resolution of violations are insufficient to carry out the purpose of the State's Environmental Law Enforcement chapter. 10 V.S.A. § 8020(h). Allowing an intervenor rights beyond this express challenge, namely to expand the scope of violations at this late stage of the process, would not only be inefficient, but it would also undermine the discretionary enforcement powers of the NRB and ANR.

Lastly, the Association suggests that a week will be required to take all testimony and evidence relating to the AOD. Having limited the scope of the hearing, however, the Court believes that a single day hearing will be sufficient with an additional day held in reserve. This matter is set for a follow-up status conference at 1:00 p.m. on Monday, April 13, at which time the Court asks that the parties be prepared to discuss a schedule for any necessary discovery, limited to the violations expressed in the AOD, and that allows this matter to be trial ready by July 1, 2015.

Electronically signed on April 10, 2015 at 12:00 PM pursuant to V.R.E.F. 7(d).

_____

Thomas G. Walsh, Judge
Superior Court, Environmental Division